Good morning, Your Honors. I'm Melissa Crowe, and I represent Amicus Curiae American Immigration Council in support of the petitioner in this case. May it please the Court. I'm going to make three arguments that explain why 8 CFR 287.3c must be interpreted to require that warrantless arrestees receive advisals prior to custodial interrogation. First, it's the only interpretation that makes sense in the context of the regulation as a whole and the broader statutory framework. Second, this interpretation is consistent with the plain language of all of 287.3c, as opposed to the government's interpretation, which cherry-picks an isolated phrase. And third, it's not precluded by this Court's discussion of advisals in Samayowa-Martinez v. Holder. In Arizona v. United States, the U.S. Supreme Court noted that the Immigration and Nationality Act distinguishes between arrests with warrants and warrantless arrests. In the event of a warrantless arrest, the noncitizen is subject to a prompt post-arrest examination under 8 CFR 287.3a. The purpose of this examination is to confirm that there's sufficient evidence to justify the arrest in the first place. If there is, an NTA, a notice to appear, is issued. And at that point, once the NTA is issued, the government has all of the evidence that it will present in court. There's no need to tell the arrestee then or later that any statement that he or she has already made during the interrogation can be used in a subsequent proceeding. In the event of arrest with warrant, the regulations don't require either an examination or advisals, because the government already has evidence of removability. For example, with respect to a noncitizen in removal proceedings, an arrest cannot be made until a notice to appear has been issued. Because advisals of rights are required only for warrantless arrestees, they must be given at a point in the removal process that applies uniquely to those individuals, namely the post-arrest interrogation. And the advisers will protect the rights of warrantless arrestees only if they're given prior to questioning. In the interest of time, I'm going to jump to a discussion of SAMAOA, which I imagine... That's the problem with... It seems to me what you've said so far is something that SAMAOA seems to be counter to. Well, Your Honor, for at least two reasons, this Court could find that it's not bound by the discussion of the timing of 287.3c advisals in SAMAOA. First, because the SAMAOA Court found that the petitioner had not been arrested under the immigration laws at the time he was questioned telephonically by a Border Patrol agent, but rather pursuant to independent authority governing the military police, the subsequent discussion in the decision of the timing of 287.3 advisals is arguably dicta. ACFR 287.3a states that the regulation applies only to individuals arrested without a warrant under INA 287a2. It's difficult for us to say something is dicta when that's the theory on which the prior decision went. In other words, they could have used another ground, but that's not really the one they did, is it? Well, there is a separate basis on which this Court could find that it's not bound by that decision. In the decision, the Court did not address the obligations of the arresting officer under ACFR 287.8. So this Court is free to find that 287.8c24 requires an arresting officer to provide certain of the advisals listed in 287.3a. And it's also free to find that 287.8c25 requires an arresting officer to provide certain of the advisals listed in 287.3bc following a warrantless arrest and prior to transferring the arrestee to an examining officer for questioning, as required by 287.3a. How do you suggest that we interpret the term administratively charged? And did Samoia address that issue? No, Samoia did not address that issue. The phrase administratively charged describes which noncitizens must receive advisals, not when the advisals must be provided. Although the timing of the advisals must relate to the period of the arresting officer's involvement in the process, because these obligations are explicitly entrusted to the arresting officer under 287.8. And as we noted in our brief, the phrase placed in formal proceedings, on which the government is so focused, uses the same structure, and refers to who is subject to the advisals, not when the advisals must be provided. So under 287.8, arresting officers must adhere to the procedures set forth in 287.3 when dealing with warrantless arrestees who will be in custody. Because the term procedures is plural, it must encompass more than just the obligations that are explicitly assigned to arresting officers under 287.3a. Namely, the obligation to determine whether there is a qualified officer available to undertake the examination. So given that the procedures specified in 287.3b and d are not explicitly assigned to arresting officers under 287.3a, it must encompass more than just the obligations that are not associated with the arrest at all, the most logical interpretation of the regulation is that arresting officers must provide certain advisals required under 287.3c. Namely, those that are not explicitly assigned to the examining officer. I would note that in De Rodriguez-Echevarria, this court found that an arresting officer's obligation under 8 CFR 287.8c24 includes one of the following. The requirement that the alien be informed of certain rights. The placement of 287.8c24 also supports this interpretation. Both the immediately preceding subsection and the following subsection describe advisals that must be given to arrestees under different circumstances. C23 addresses advisals that must be provided to all arrestees. C25 addresses advisals that must be provided to arrestees who are going to be criminally charged. And so it makes sense that C24 would refer to the advisals that will be provided to arrestees who are going to be administratively charged. Your Honors, given the exceptional importance of this issue, which will determine the obligations of immigration officers all across the country, and the rights of warrantless arrestees in a variety of circumstances, at the border and in a myriad of other contexts, like worksite raids and home raids, roving border patrol encounters, and so forth, we would urge the court to consider en banc review if it finds that it is in fact bound by SMAOA. If we agreed with you that on your construction of the regulations, that it is in fact bound by SMAOA. Could we decide that right then, or would we have to send it back to the BIA for construction of that regulation? I believe that you could decide it right then, because our construction is based on the plain language of the regulation. So does it make any difference whether the removal is pursuant to Section 240 or Section, or the other section, 238? It's interesting that the regulation refers to both of those sections, and I think that that further illustrates why the government's interpretation is not correct. The government says, with respect to 240 proceedings, that the advisals must be provided when the notice to appear is filed with the court, which is when removal proceedings begin. In 238 proceedings, the proceedings actually begin when the charging document is served on the individual. So if you interpret the regulation or the timing of the advisals in a parallel way, they would have to be provided to arrestees at two different points in the process, depending whether they're going to be charged under 238 or under 240. And in the case of 238 proceedings, the individual would get the advisals under 287.3c and the advisals in the charging document at the same time. And there's significant overlap in those advisals. So 238 is the expedited removal process, and 240 is any other type of removal? Well, 287.3c explicitly accepts people who are subject to expedited removal. And the regulatory history of 287.3c makes clear that the main purpose of insertion of the placed informal proceedings language into that reg in 1997 was, in fact, to distinguish between noncitizens who would be placed in formal proceedings under either 238 or 240 and individuals who would be subject to expedited removal proceedings under 235. I won't ask you how an advisal differs from advice. Well, the advisal, the substance of the advisals is, of course, explicitly stated in the 287.3c, so I believe they would be more specific. Thank you, Your Honors. May it please the Court, Michael Kodner, additionally on behalf of Petitioner Rebecca Segovia. I don't want to waste any of the Court's further time in terms of having any kind of overlapping arguments. However, referring back to how we can try to distinguish the Samayoa argument in the Samayoa case, I think if we're using an argument of analogy here, the way that I read Samayoa is, is the fact that for there to be a, for us to get to 287.3, there has to be a context of a regulatory violation to begin with. So if we're looking at an analogy of a house. The analogy that I'm using is the construct of a house. So the way that I read Samayoa is, is the foundation of the house is that there has to be initial border contact. I mean, there has to be contact by an immigration official to create that foundation. And that allows us to get to the roof, which is 287.3c. And I think that that clarifies Amicus Counsel's argument that it does a little bit make the roof somewhat dicta in that situation, because we can't get technically to the 287.3c issue if we don't have an initial contact. In this case, in fact, in both cases, we do have an initial contact by the Border Patrol agents. But in Samayoa, the person wasn't under arrest by the Border Patrol? No. In Samayoa, the person who did the original detention was a China Lakes military officer or something like that. And that, from my reading of the situation, was where the court started and said, we can't even technically get to the regulatory violation because there was no contact, initial contact. There was no custodial detention. Was Segovia arrested by the military? No, she was not. She was taken at the border. She was in secondary before she made those admissions in the I-213 and the sworn statement and the G-166. So she never, that's where I'm differentiating this case from Samayoa. The whole detention from the beginning has to do with immigration officials, which I believe, if we're going back to that foundation argument, allows us to walk in on that foundation, allows us to get to the 287.3 issue. She testified at her hearing, didn't she? She did, Your Honor. And what do we do with that testimony, even if her statement was suppressed? That's a very good question, Your Honor. I think what it does is it gives us a situation to remand back to the immigration judge to see if that testimony in itself, on top of the sworn statement of the smuggled alien, was enough to sustain the charge. If we look more closely at the actual testimony, it's very weird. I've gone before the immigration court in El Centro before, and what happens there is, what happened in this case is pretty traditional. The immigration judge acts more often than not as the prosecutor and asks these questions as opposed to the prosecutor asking these questions. The same thing happened in this case where she said, the immigration judge had stated, isn't it true that you said this, this, and that? There was two different versions. And my point is, is that I don't know if we're going to use the Altamirano standard to determine whether they could have met the alien smuggling charge, whether her testimony by itself was enough. But I think what it does is it can ask us the question, if we are to take out these statements that she made in the sworn statement and in the I-213 and send it back and we get rid of the tainted, at least in my opinion, the tainted documents. That's the question, it seems to me, is whether that would be tainted and compelled by the earlier. It's right, and I want to make clear that our argument on 287.3 obviously doesn't apply to what the illegal alien herself said in her own sworn statement. We don't have standing, obviously, to challenge that, and there's nothing that I can do about that at that point. But the question then becomes, I think that she should be entitled in that respect to whether, if we take the tainted documents out, whether the tainted documents would satisfy the burden of proof. Because essentially that's what we're asking for in this respect, is that she should have been advised in these situations, she should have been advised of the right to counsel and the right to remain silent in the situations, which we firmly believe is consistent with the regulations. And I do see that my time is up, Your Honor. I'm going to ask you a couple of further questions. There's some dispute as to whether or not she was in fact given the advisals. I see that it says I'm an officer. I'm authorized to make sworn statements. I also want to explain your rights, purpose and consequences. I don't know if this is extensive enough to cover what 287.3 requires. Any statement you make may be used against you. And you're talking about the I-213, Your Honor? Yes. Well, the only statement I have is obviously that's an issue in the record that would be discussed. But as we know, the law requires that this court is constricted to the certified record, to the administrative record. The form to which they refer to in the I-213, and this is at certified record at 134 in the first paragraph, where it talks about what kind of advisals were given. This form was not included in the certified record. And that's another thing that doesn't make sense to me. The government went through this procedure to provide all of these documents, but yet doesn't provide the document where supposedly she was advised. So I think the record is a little bit inconsistent. It's not in the certified record? I did not see it. How do we have it? I don't know, Your Honor, because by the time this decision, and I do believe that there was a FOIA request to see if there was something in there that reflected that, and I don't know if it was truly before that. But there were two different attorneys on the case. This case came to our office after the board's decision, and when we had started to invoke De Rodriguez in a timely manner. Okay, so she was charged, Mr. Garrovia was charged nearly eight years ago. Is there anything intervening event that has occurred that has any impact on immigration proceedings? Such as her eligibility for a new waiver or something? That is a little fatal to her. The alien smuggling charge is a little fatal in a lot of respects. We've certainly researched that, and I don't know if there's any intervening cause at this point. So I think that she is pretty much at a matter of last resort. Thank you, Your Honor. Your Honors, the agency properly found that Ms. Garrovia was inadmissible for attempted alien smuggling. Ms. Garrovia provided affirmative assistance to a foreign national by opening the trunk of her car to let the foreign national in the car, and she admitted that she and her husband together tried to attempt to help this woman cross the border without the knowledge of immigration officers at the border. The petitioner never objected to the admissibility of the I-213 during her removal proceedings. Indeed, as the I-13 notes, the petitioner was advised of her rights to an attorney. So was it in the certified record or not before the IJ? The I-213 was. What the immigration officer noted in the I-213 was that she read Ms. Garrovia her rights according to a form entitled I-214A, and the form I-214A containing those rights is not in the record. Does it indicate what time those rights were given? I don't believe the I-213. In other words, what I'm really asking, I guess, is before or after they started asking her questions. My understanding from reading the I-213 is the immigration officer came in, read Ms. Garrovia these rights, Ms. Garrovia indicated that she wanted to proceed without an attorney, and then she made the inculpatory statements. In addition to making these statements to the immigration officer, Ms. Garrovia also made these same incriminatory statements before the immigration judge, and she made these statements voluntarily. She indicated that, again, that she, and consistently with what she said before the immigration officer, that she aided a woman by opening the trunk, helping her get in, and then at various points she initially testified that she also closed the trunk. Later she recanted and said that she didn't close the trunk. She didn't help the woman get in. She just opened the trunk, and I believe closed the trunk. Okay. Was Ms. Garrovia in administrative proceedings when the officer completed the form called record of sworn statement in administrative proceedings? I don't know that she had, she was not yet in administrative proceedings because the notice to appear had not yet been filed with the immigration court. Why is this document titled record of sworn statement in administrative proceedings? Someone must contemplate that this is an administrative proceeding. I would have to take a look at that document again. I have the document. It's the document where she made the incriminatory statements. I mean, doesn't that undercut Samoia? It doesn't undercut Samoia because even though it may be an administrative proceeding, and I'm not sure why the document is termed that, the notice to appear still had not yet been filed with the immigration court, so she was not yet in formal removal proceedings as required under 287.3C. All right, but isn't there another statute that only requires that the, that says that proceedings commence upon personal service? So 238, removal proceedings under Section 238B of the Act shall commence upon personal service of the notice of intent. That's, that's, refers to expedited removal proceedings, and I don't believe Ms. Segovia was ever subject to expedited removal proceedings in this context. Well, can you explain, give me a rationale why in expedited removal proceedings commence upon personal service of the notice of intent, where under other removal proceedings the language says filed? Basically because with expedited removal proceedings, an alien is not entitled to appear before an immigration judge, and so officers with the DHS Immigration and Customs Enforcement conduct an expedited form of removal and have, make less considerations than an immigration judge, and there's less opportunity for the petitioner to contest their removability or apply for relief from removal. But here the petitioner has not argued, and no one is suggesting that Ms. Segovia was ever subject to proceedings, administrative proceedings under 238, expedited removal. She was, she was served with a notice to appear before the San Diego Immigration Court, and those proceedings were conducted subsequently under 240. You said 238. Is expedited removal under 238? Yes, Your Honor. Okay. So in addition to making the inculpatory statements to the immigration officers at the time she was in secondary inspection, the petitioner also made the same statements to the immigration judge, and the immigration judge and the board relied on those statements in determining that the government had satisfied its burden for establishing that Ms. Segovia was inadmissible. There's no reason for this Court to remand for further consideration of Ms. Segovia's inadmissibility, given that both the board and the immigration judge relied on her testimony, which is fully consistent with the information that she provided to the immigration officers as well. The, as far as her direct appeal goes, the immigration judge and the board relied on her testimony because the petitioners and the BIA were not asked to suppress the statement. They were never asked to suppress the statement. In other words, this argument really was framed for the motion to reopen more than it was for the direct appeal, as I understand the record. That's correct. And this is in contrast with both Samayoa and Rodriguez Echevarria, where the petitioners, at the time that the government tried to admit the I-213 statements, the petitioners made timely objections to the admission of that evidence, where the petitioner here did not do so. And as far as Amicus and the petitioners' attempts to distinguish Samayoa, they simply are misreading the court clearly did not rely on the fact that the petitioner had been arrested by officers other than immigration officers in concluding that 287.3C had not been violated. The court in Samayoa stated that because the petitioner had not yet been placed into formal removal proceedings, he was not entitled to be advised of any rights according to 287.3C. Those advisals had not attached. So when the immigration, say the border patrol detains someone and puts them in one of the detention centers, which would be warrantless arrest, and they give the alien a notice of intent or an NTA, and it hasn't been reported to the court and the alien is just sitting there, is it the government's position that it can interrogate those aliens to any extent it wants without providing any due process warnings to them? No, Your Honor, that's not the government's position. And in fact, Ms. Segovia here was never sent to a detention center, at least from... saying what's the reach of this decision, because if you... I mean, the logical implication of saying that Samayoa is right is that until the government at its whim finally, you know, files the charge with the immigration court, it can engage in custodial interrogations of aliens. Well, in effect, I don't think that's what happens. And actually, I can refer you to 287.3D, which basically says that after... within 48 hours of an alien's warrantless arrest, the alien or the immigration officer must determine whether the alien will be charged and placed into removal proceedings. And by that time, typically an alien is served with a notice to appear. And those... the notice to appear contains all of the written advisals that are required under 287.3C. So it's not like we... this upholding Samayoa... But we don't say that just handing someone a piece of paper necessarily advises them of their rights. Well, the notice to appear, the form itself, does contain each of the warnings or advisals required by 287.3C. 287.3C does not require immigration officers to orally advise aliens of their rights. It merely states that they need to be advised of those rights by the time that they are placed into formal removal proceedings, which occurs with the filing of the notice to appear. By your construction of 287.3, however, that's gratuitous. In other words, the notice to appear doesn't have to have that. Because they're not... until a notice to appear is filed, they're not in formal proceedings. Until the notice to appear is filed, they're not in formal proceedings. And I suppose if the notice to appear did not have those advisals in there, then the aliens would need to be advised in another manner. But they would need to be advised by the time that the NTA was filed. But the form of the NTA itself plainly lays out all of those advisals. And is that given in the aliens' language? I believe it's given in English and in Spanish. It seems to me if there is... if Samayoa is to be distinguished, and I don't know whether it can be or not, it would be with reference to 287.8. I think that's C4. In other words, when is somebody administratively charged and does advice have to be given then? When is somebody administratively charged? An individual is administratively charged when they are served with a notice to appear. And your position then is that since the warnings are in the notice to appear, that's necessarily satisfied, is that... Yes, well, you know, the government doesn't read 287.8C to Romanet 4 to conflict with or to provide a different time limit for when these advisals must be read. That subsection of the regulations is to provide standards to enforcement officers, the standards that they need to follow. And 287.12 makes clear that these regulations aren't to create additional enforceable rights at law for aliens, but rather to ensure that immigration officers follow the procedures as they're established. Of course, if 12, if subsection 12 is given, that affected... I have some sympathy with your opponents who say, well, then, what's all this argument about? Why are we even talking about this? Why have cases been decided on this ground when all anybody had to say was, well, none of this provides any rights anyway? Well, I would draw your attention to a decision in... Actually, I'll withdraw that, actually. But what I will say, Your Honor, is that 287.8C42 does not require reading of advisals prior to the time that 287.3C requires it. Because of the cross-reference? Right. All that it does is distinguishes between aliens who are arrested without a warrant and administratively charged and aliens who are arrested without a warrant and criminally charged. And these standards for enforcement direct immigration officers to the proper procedures that they should follow. And so there's no need to read any conflict in these two regs. If there are no further questions, Your Honors, I'll submit on the briefs. Thank you, Counsel. Yes, sir. Thank you, Your Honor. Michael Cotner again for Petitioner. Your Honor, Judge Wortha, I want to go back to the situation that you were fleshing out where you asked government counsel, so when this person is sitting in custody and until the NTA is filed, is that what you're asking for? While I understand that government counsel, I respect their answer, I also respectfully disagree that that's what they're saying. Because if I direct the court's attention to a matter of EMRF, it says under the plain language of the regulation, a prerequisite, sorry, the current regulation require the initiation of formal proceedings as a necessary precondition to the mandatory issuance of a visa. So I think what you were fleshing out is exactly what they are saying. That the fact that this person can sit there in custody forever, how long it is, and we know that from the issuance of the NTA to the actual filing, sometimes this can be months. It can be years. I've had cases where an NTA has been issued, now this person has been in custody for a year, but there's been a year, years between issuance of the NTA and actual filing of the NTA. And I think that that's the problem with the situation here. We are not asking for something that is out of the ordinary here. You know, if we look over our shoulder and we look at guidance from Miranda, which in fact was issued almost in, at the same time as the current version, not the current version, the prior version of 287, which did include the advisals, this is the guidance that we have. You know, this is not an out-of-left-field context here. This is a custodial interrogation, and it's requesting a simple thing of giving advisals. And the reading that the government is requesting, I think, is the absurd situation, the fact of they're in custody, they're in the situation, and then we can't give these advisals until the proceedings are initiated? Do you think, aside from these regulations, that your client has a due process, a federal constitution, a constitutional due process right under the Fifth Amendment to be given certain advisals before being interrogated? One hundred percent, Your Honor, and I would direct the Court's attention to U.S. v. Chan, and I understand that that was a criminal case, but it said, this is as soon as, as recent as 2006, civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the Miranda warnings. Again, I refer the Court's attention back. This is not an out-of-the-world concept here that we're asking for. This is not an onerous situation. So what troubles me here is actually, I don't know, I mean, alien smuggling is a crime. Correct. So her, she's being, she's in removal proceedings for having committed a crime. Doesn't the fact she's arrested for a crime trigger the issue, Your Honor? I would absolutely argue that, and the fact that the agent who's doing the interrogation has no idea at that point whether it's going to be a criminal or a civil case. They don't know. Is there any case where Miranda warnings were required? Because there's a number of instances where a person may be removed for having committed a crime, and I mean, is there a case that says Miranda applies to undocumented aliens? I would be happy to do some research on that, Your Honor. We've looked for that, and I don't know if I have one that specifically comes to mind. But I can use practical experience in the fact that I've had cases before where there's been the carryover from criminal and immigration. I've had the case in criminal, and we've dealt with the stuff that's in the I-213, and it wasn't subject to suppression. And then after, even after we maybe have pled to a different charge in the alien smuggling, it goes back to the, it goes back to the immigration case when there's transfer of immigration, and that's used to kick them out of the country. Could your client still be in charge with a crime? Yes. I don't know the statute of limitations on a 1324, but at the time, I think that it's without doubt that she was subject to actually the worst type of alien smuggling, which was for financial gain. Because the minute that she said those statements in the I-213 that somebody was going to get paid, she's subjecting herself to far greater penalties than being kicked out of the country in terms of being in a Federal prison. For purposes of the administrative proceeding, does she have a Fifth Amendment right against self-incrimination? I understand there are, I understand the way the law is, Your Honor. Lopez Mendoza, I think, is a problem for you there. I do, I do understand that, Your Honor. And the only thing that I can say at this respect, Your Honor, is that at the time of the interrogation, there's no knowing whether it's going to be a civil or a criminal case. So I don't know how we harmonize that. Thank you, Your Honor.
judges: Canby, Reinhardt, Wardlaw